*In re* J.R., Alleged to be an Abused and Neglected Minor (The People of the State of Illinois, Petitioner-Appellee, v. Lona Griffin, Respondent-Appellant).

Fourth District   No. 4—02—0973

Opinion filed July 30, 2003.

Adele M. Saaf, of Bloomington, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 2002, the State filed a petition to terminate the parental rights of respondent, Lona Griffin, as to her son, J.R. (born July 1, 1999). Following a November 2002 hearing, the trial court found respondent unfit, and following a separate hearing that same day, the court found that it would be in J.R.'s best interest to terminate respondent's parental rights. (The court also terminated the parental rights of J.R.'s father, Frederick Robb, subject to the terms of a final and irrevocable consent to adoption by specified persons—namely, Robb's parents, Joyce and Larry Hyatt. However, he is not a party to this appeal.)

Respondent appeals, arguing that the trial court's order terminating her parental rights should be reversed because (1) the State's termination petition failed to state that she could "permanently" lose her parental rights, as is required under section 2—13(4) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—13(4) (West 2000)); and (2) the court's finding that it was in J.R.'s best interest to terminate her parental rights was against the manifest weight of the evidence. We affirm.

## I. BACKGROUND

In January 2001, the State filed a petition for adjudication of ward-

ship regarding J.R. and his younger brother, Joseph R. (born December 22, 2000), alleging that (1) they were abused minors in that a person responsible for or residing in the same household as J.R. and Joseph R. caused physical injury to Joseph, by other than accidental means, such that he was brain dead with bruises in the folds of his neck and on his scalp; and (2) information provided by respondent was not consistent with Joseph R.'s injuries (705 ILCS 405/2—3(2)(i) (West 2000)). Later in January 2001, the State filed an amended petition, alleging that J.R. and Joseph R. were neglected minors in that (1) they were residing in an environment injurious to their welfare when in the care of respondent and Robb, in that respondent and Robb had unresolved issues of domestic violence (705 ILCS 405/2—3(1)(b) (West 2000)); and (2) they were residing in an environment injurious to their welfare when in the care of Robb, in that Robb had unresolved issues of anger management (705 ILCS 405/2—3(1)(b) (West 2000)). In April 2001, the State filed a second amendment to its adjudication petition, alleging that the children were neglected due to Robb's unresolved issues of substance abuse (705 ILCS 405/2—3(1)(b) (West 2000)). At an April 2001 hearing, Robb admitted the allegation in the State's second-amended petition, and the court adjudicated J.R. and Joseph R. neglected minors.

Finally, in September 2001, the State filed a third-amended adjudication petition, alleging that (1) J.R. and Joseph R. were abused in that respondent had inflicted injuries, by other than accidental means, which caused Joseph's death (705 ILCS 405/2—3(2)(i) (West 2000)); and (2) respondent had been convicted of the first degree murder of Joseph R. (McLean County case No. 01—CF—90).

At a September 2001 adjudicatory hearing, respondent stipulated to the allegations contained in the State's third-amended petition, and the trial court accepted her stipulation and adjudicated J.R. and Joseph R. abused minors. The court then conducted a dispositional hearing and adjudicated J.R. a ward of the court and placed him in the guardianship of the Illinois Department of Children and Family Services (DCFS).

In April 2002, the State filed its petition to terminate respondent's parental rights, alleging that respondent was unfit under section 1(D)(q) of the Adoption Act (750 ILCS 50/1(D)(q) (West 2000)), in that she had been criminally convicted of murdering a child.

At the November 2002 hearing on the State's termination petition, the trial court took judicial notice that (1) in case No. 01—CF—90, respondent was charged with the first degree murder of Joseph R.; (2) in June 2001, a jury convicted respondent of that crime; and (3) in September 2001, respondent was sentenced to 25 years in prison. The

State presented no other evidence of respondent's unfitness. At the conclusion of the hearing, the court found respondent unfit based on the ground alleged in the State's petition.

At the best-interest hearing, DCFS caseworker Glenda Bassett testified that she was assigned to the case for a few weeks in January 2001, was reassigned to the case in April 2002, and had been the caseworker ever since. At the time of the hearing, J.R. had been living with his paternal grandparents, the Hyatts, for one year. J.R. was doing well in the Hyatts' home and appeared "very bonded" to them. Joyce was at home with J.R. during the day, J.R. had many toys to play with, and the Hyatts made sure he received his asthma medication. DCFS recommended that terminating respondent's parental rights would be in J.R.'s best interest. The Hyatts had expressed a desire to adopt J.R., and DCFS believed that they would meet the applicable standards regarding financial means and the ability to meet J.R.'s emotional needs. Bassett opined that the Hyatts should adopt J.R.

The trial court took judicial notice of all the proceedings in the case and admitted into evidence the November 12, 2002, dispositional report prepared by the Court Appointed Special Advocates (CASA). The CASA report indicated that J.R. was doing well with the Hyatts. He was receiving appropriate medical care, and his asthma and sleep patterns were improving. He was in a safe, stable, and nurturing environment. CASA recommended termination of respondent's parental rights based on (1) her conviction for murdering Joseph R.; and (2) the fact that her long-term incarceration would make it impossible for her to play a meaningful role in J.R.'s life.

J.R.'s guardian *ad litem* also recommended termination of respondent's parental rights.

At the conclusion of the hearing, the trial court found it in J.R.'s best interest to terminate respondent's parental rights.

This appeal followed.

## II. ANALYSIS

### A. The State's Termination Petition

Respondent first argues that the State's petition to terminate her parental rights was defective in that it did not state that she could "permanently" lose her parental rights, as is required under section 2—13(4) of the Act (705 ILCS 405/2—13(4) (West 2000)). The State responds that its failure to use the word "permanently" in its termination petition does not warrant reversal in this case. We agree with the State.

## 1. *Section 2—13(4) of the Act*

■ Section 2—13(4) of the Act provides as follows:

"If termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2—29 is sought, the petition shall so state. If the petition includes this request, the prayer for relief shall clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing.

In addition to the foregoing, the petitioner, by motion, may request the termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2—29 at any time after the entry of a dispositional order under [s]ection 2—22." 705 ILCS 405/2—13(4) (West 2000).

## 2. *Forfeiture*

In support of her argument, respondent cites one case, *In re Andrea D.*, 336 Ill. App. 3d 335, 783 N.E.2d 681 (2003). In that case, the respondent argued that the State's petition to terminate his parental rights was defective on its face because it "failed to apprise [him] that his parental rights could be 'permanently' terminated," citing section 2—13(4) of the Act (705 ILCS 405/2—13(4) (West 2000)). In that case, as here, the respondent failed to raise any objection to the State's petition in the trial court. *Andrea D.*, 336 Ill. App. 3d at 337, 783 N.E.2d at 683. On review, the Second District Appellate Court (1) opted to review the issue under the plain-error exception to the forfeiture rule, (2) concluded that due to the omission of the word "permanently," the State's petition was defective on its face, and (3) based on that conclusion, reversed the trial court's order terminating the respondent's parental rights. *Andrea D.*, 336 Ill. App. 3d at 337-39, 783 N.E.2d at 683-85. We decline to follow *Andrea D.* because we disagree with the Second District's holding and the analysis upon which it is based.

■ Initially, we note that termination-of-parental-rights proceedings are civil in nature (750 ILCS 50/20 (West 2000)); *In re E.S.*, 246 Ill. App. 3d 330, 335, 615 N.E.2d 1346, 1349-50 (1993)), and under section 2—612(c) of the Code of Civil Procedure, "[a]ll defects in pleadings, either in form or substance, not objected to in the trial court are waived" (735 ILCS 5/2—612(c) (West 2000)). In some circumstances, however, justice requires relaxation of this forfeiture rule. Therefore, courts have relaxed the rule when the State's termination petition fails to state a cause of action. See *In re Rauch*, 45 Ill. App. 3d 784, 787-89, 359 N.E.2d 894, 896-97 (1977) (relaxing the forfeiture rule to consider the respondent's claim that the State's termination petition

failed to state a cause of action when it failed to (1) allege that the respondent was an unfit parent, and (2) set forth an alleged ground for unfitness); *In re J.P.S.*, 198 Ill. App. 3d 633, 634, 556 N.E.2d 268, 269-70 (1990) (reviewing the respondent's claim, raised for the first time on appeal, that the State's supplemental termination petition failed to state a cause of action); *cf. In re L.M.*, 205 Ill. App. 3d 497, 502-03, 563 N.E.2d 999, 1002 (1990) (declining to review the respondent's claim that the State's termination petition was deficient when the respondent (1) had not raised the claim in the trial court, and (2) did not claim that the petition failed to state a cause of action). Thus, the threshold question before us in this case is whether the alleged defect in the State's petition resulted in its failure to state a cause of action. We conclude that it did not.

■ The State's petition alleged, in pertinent part, that respondent was an unfit person under section 1(D)(q) of the Adoption Act (750 ILCS 50/1(D)(q) (West 2000)) for the reason that she had been criminally convicted of murdering a child. The petition clearly stated that the State sought the termination of her parental rights based on that ground. Given that the State's petition clearly stated what action it sought the trial court to take, and the legal grounds that justify that action, the defect respondent complains of did not constitute a failure to state a cause of action. Accordingly, we hold that it is not a defect that may be raised for the first time on appeal. By failing to object to the State's petition in the trial court, respondent has forfeited the right to raise this issue on appeal.

We acknowledge that this result might appear harsh in light of the special nature of termination proceedings. We recognize that although termination-of-parental-rights proceedings are civil in nature, termination proceedings involve fundamental liberty interests and invoke some constitutional concerns akin to those implicated in criminal cases. *In re J.P.*, 316 Ill. App. 3d 652, 658, 737 N.E.2d 364, 368-69 (2000); *In re M.H.*, 313 Ill. App. 3d 205, 214-15, 729 N.E.2d 86, 94-95 (2000). However, even if we were to afford respondent the greatest procedural protections available—that is, those afforded to criminal defendants alleging defects in a charging instrument—her claim would fail if brought for the first time on appeal.

Under Illinois criminal law, the existence of certain defects in a charging instrument may be raised at any time, including for the first time on appeal. For example, a charging instrument that fails to state an offense contains a defect implicating due process concerns and thus may be attacked at any time. *People v. Alvarado*, 301 Ill. App. 3d 1017, 1022, 704 N.E.2d 937, 941 (1998). However, when a criminal defendant challenges the charging instrument for the first time on appeal, the

reviewing court considers the claim under a lower standard than that which the trial court would have applied had the objection been raised below. *People v. Thingvold*, 145 Ill. 2d 441, 448, 584 N.E.2d 89, 91 (1991). If an indictment is attacked either before or during trial, the instrument must strictly comply with statutory pleading requirements. *Alvarado*, 301 Ill. App. 3d at 1022-23, 704 N.E.2d at 941. When a charging instrument is attacked for the first time on appeal, however, the reviewing court considers only whether the indictment apprised the accused of the precise offense charged with enough specificity to (1) allow preparation of a defense, and (2) allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct. *People v. Smith*, 337 Ill. App. 3d 819, 823, 786 N.E.2d 1121, 1124 (2003). Thus, a criminal defendant's conviction will not be reversed based on a technical defect in the charging instrument raised for the first time on appeal unless the defendant shows that the defect prejudiced him in preparing his defense. *People v. Maggette*, 311 Ill. App. 3d 388, 394-95, 723 N.E.2d 1238, 1243 (2000).

In this case, respondent does not contend that the State's failure to state that it sought to "permanently" terminate her parental rights in its termination petition misled her or that she was in any way prejudiced by the omission. She does not claim that she did not know that the termination of her parental rights would be permanent. The record contains no indication that respondent or her counsel failed to grasp the import of the proceedings. In light of respondent's failure to allege, and our inability to ascertain from the record, any way in which the alleged defect affected respondent's rights or interests, her claim would fail even under the most generous analytical framework.

We are perplexed by the Second District's reliance on the plain-error doctrine. As previously discussed, a framework for reviewing pleading-defect claims raised for the first time on appeal already exists, and application of the plain-error doctrine to civil cases is " 'exceedingly rare and limited to circumstances amounting to an affront to the judicial process.' " *Holder v. Caselton*, 275 Ill. App. 3d 950, 959, 657 N.E.2d 680, 687 (1995), quoting *Allison v. Stalter*, 251 Ill. App. 3d 127, 131, 621 N.E.2d 977, 979 (1993). Moreover, even under the criminal law, plain error is not implicated when a defendant challenges a charging instrument; rather, courts apply the analysis set forth above.

■ Although we have determined that the forfeiture rule bars respondent's claim, we acknowledge that this rule is an admonition to the parties and does not impose a limitation on the reviewing court. *In re K.A.*, 335 Ill. App. 3d 1095, 1099, 782 N.E.2d 937, 940 (2003). This court may overlook considerations of forfeiture in the interest of

developing a sound body of law (*In re Marriage of King*, 336 Ill. App. 3d 83, 91, 783 N.E.2d 115, 122 (2002)), and may review any issue so long as the record contains facts sufficient for its resolution (*Ward v. Community Unit School District No. 220*, 243 Ill. App. 3d 968, 974, 614 N.E.2d 102, 107 (1993)). In light of these principles, we will address on the merits respondent's claim regarding the pleading requirement of section 2—13(4) of the Act (705 ILCS 405/2—13(4) (West 2000)).

### 3. *The Pleading Requirement of Section 2—13(4) of the Act*

As stated above, respondent contends that section 2—13(4) of the Act required the State to include the word "permanently" in its termination petition. The State responds that the section 2—13(4) requirement that petitions "clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing" (1) applies only when the State seeks to terminate parental rights in the same proceeding in which it seeks an adjudication of neglect, abuse, or dependency; and (2) does not apply when, as here, the State files a termination petition under section 2—29 of the Act (705 ILCS 405/2—29 (West 2000)) after there has been an adjudication of abuse and a dispositional order has been entered. We agree with the State.

■ We review *de novo* questions of statutory construction. "The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature [citations], while presuming the legislature did not intend to create absurdity, inconvenience, or injustice." *In re D.D.*, 196 Ill. 2d 405, 418-19, 752 N.E.2d 1112, 1119-20 (2001). The most reliable indicator of legislative intent is the language of the statute itself; thus, our analysis of any statute begins with its language. When the language is plain and unambiguous, courts may not read in exceptions, limitations, or other conditions. *D.D.*, 196 Ill. 2d at 419, 752 N.E.2d at 1120. However, when the meaning of a statute cannot be ascertained from its language, courts may resort to aids for statutory construction, including a statute's legislative history and transcripts of legislative debates. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 397-98, 789 N.E.2d 1211, 1214 (2003).

Without question, section 2—13 of the Act, in its entirety, pertains to petitions seeking an adjudication of neglect, abuse, or dependency. Subsection (2) of section 2—13 provides, "[the petition] shall allege that the minor is abused, neglected, or dependent, with citations to the appropriate provisions of this Act, and set forth (a) facts sufficient to bring the minor under [s]ection 2—3 or 2—4." 705 ILCS 405/2—13(2) (West 2000). (Section 2—3 of the Act defines "neglected and abused minors" (705 ILCS 405/2—3 (West 2000)), and section 2—4 of

the Act defines "dependent minor" (705 ILCS 405/2—4 (West 2000)).) Subsection (3) of section 2—13 states that "[t]he petition must allege that it is in the best interests of the minor and of the public that he be adjudged a ward of the court." 705 ILCS 405/2—13(3) (West 2000).

The next subsection of section 2—13 is subsection (4), which, as previously stated, provides as follows:

> "If termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2—29 is sought, the petition shall so state. If the petition includes this request, the prayer for relief shall clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing.
>
> In addition to the foregoing, the petitioner, by motion, may request the termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2—29 at any time after the entry of a dispositional order under [s]ection 2—22." 705 ILCS 405/2—13(4) (West 2000).

Consistent with our interpretation of preceding subsections (2) and (3), we conclude that where subsection (4) refers to "the petition," it is referring to the aforementioned petition for adjudication of neglect, abuse, or dependency, and where it refers to "this hearing," it is referring to the adjudicatory hearing on that petition. Any other interpretation would render superfluous the second paragraph of section 2—13(4), which states that "in addition" to "the foregoing"—that is, seeking termination of parental rights "at this hearing"—a petitioner may seek termination of parental rights "at any time after the entry of a dispositional order under [s]ection 2—22." 705 ILCS 405/2—13(4) (West 2000). Thus, "this hearing" must refer to the adjudicatory hearing, which necessarily takes place before a dispositional order under section 2—22 of the Act (705 ILCS 405/2—22 (West 2000)) has been entered.

The logic and consistency of our interpretation of section 2—13(4) is apparent when the Act is viewed as a whole. The language at issue in this case became part of the Act when the legislature enacted Public Acts 89—704 and 90—28 (Pub. Act 89—704 § 5, eff. January 1, 1998 (1996 Ill. Laws 3963, 3964); Pub. Act 90—28, § 10—20, eff. January 1, 1998 (1997 Ill. Laws 1498, 1549)). These enactments amended the Act, in pertinent part, to allow the State to expedite termination-of-parental-rights proceedings in egregious cases of abuse or neglect. To that end, Public Act 89—704 (1) amended section 1—2 of the Act to provide that when a ground for unfitness under section 1(D) of the Adoption Act can be met, "it may be appropriate to expedite termina-

tion of parental rights in abandonment cases; or in those extreme cases in which the parent's conduct toward the child or the child's sibling has been so egregious that the behavior justifies termination of parental rights" (Pub. Act 89—704, § 5, eff. January 1, 1998 (1996 Ill. Laws 3963, 3964), amending 705 ILCS 405/1—2 (West 1996)); (2) amended section 2—18 of the Act to allow the trial court to consider, at the adjudicatory hearing, legally admissible evidence on grounds of unfitness under section 1(D) of the Adoption Act (Pub. Act 89—704, § 5, eff. January 1, 1998 (1996 Ill. Laws 3963, 3966), amending 705 ILCS 405/2—18 (West 1996)); (3) amended section 2—21 of the Act to allow trial courts to terminate parental rights at the "initial dispositional hearing" when certain conditions are met (Pub. Act 89— 704, § 5, eff. January 1, 1998 (1996 Ill. Laws 3963, 3968-69), amending 705 ILCS 405/2—21 (West 1996)); and (4) amended section 2—13(4) of the Act to provide that if the State's petition seeks termination of parental rights, its "prayer for relief shall clearly and obviously state that the parents could permanently lose their rights *** at this hearing" (Pub. Act 89—704, § 5, eff. January 1, 1998 (1996 Ill. Laws 3963, 3965), amending 705 ILCS 405/2—13(4) (West 1996)).

Public Act 90—28 added the second paragraph to section 2—13(4) of the Act, clarifying the State's right to seek termination of parental rights at any point after the entry of a dispositional order (Pub. Act 90—28, § 10—20, eff. January 1, 1998 (1996 Ill. Laws 1458, 1549), amending 705 ILCS 405/2—13(4) (West 1996)). Public Act 90—28 also amended three sections of the Act to provide that when the trial court (1) adjudicates a minor abused, neglected, or dependent (705 ILCS 405/2—21(1) (West 2000)), (2) awards guardianship to DCFS at a dispositional hearing (705 ILCS 405/2—22(6) (West 2000)), and (3) enters a dispositional order granting guardianship to DCFS (705 ILCS 405/2—23(1)(c) (West 2000)), the court shall admonish the parents that they must cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that require the child to be in care, or risk termination of their parental rights. 705 ILCS 405/2— 21(1), 2—22(6), 2—23(1)(c) (West 2000).

Thus, through the amendments to the Act provided in Public Acts 89—704 and 90—28, the legislature, in its wisdom, not only granted the State additional powers, but also granted respondent parents attendant protections. When the State seeks termination of parental rights in an expedited fashion—that is, contemporaneous with an adjudication of wardship—its petition must clearly and obviously state that the parents could permanently lose their rights at the hearing on that petition. This requirement (1) ensures that the parent is put on notice of what is immediately at stake, and (2) attempts to prevent

parents from being blindsided by an adjudication petition that buries the request for termination of parental rights amid numerous other allegations and requests for relief. In light of the magnitude of the rights and issues at stake, such procedural protections are fair and reasonable.

Similarly, with the enactment of Public Act 90—28, the legislature provided procedural protections to respondents who face termination proceedings at a later point. In those cases where the State does not seek an expedited termination of parental rights but files a termination petition at some point after a dispositional order has been entered, the respondent will have been admonished by the trial court (possibly as many as three times) that her parental rights will be at stake in the event she fails to cooperate with DCFS, comply with service plans, or otherwise follow the court's directives. Thus, when the State files a petition for termination of parental rights at this point, the concerns addressed by the pleading requirement of section 2—13(4) do not arise. The respondent has been adequately forewarned that her parental rights are at stake. Moreover, the State's petition will be labeled as a petition for termination of parental rights, and no risk exists that the petition will appear to be anything other than a petition seeking termination of parental rights.

■ In light of the foregoing considerations, we hold that the language of section 2—13(4) (705 ILCS 405/2—13(4) (West 2000)) of the Act requiring that a petition "clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing" does not apply to termination petitions brought under section 2—29 of the Act (705 ILCS 405/2—29 (West 2000)) following the entry of a dispositional order under section 2—22 of the Act (705 ILCS 405/2—22 (West 2000)).

## B. J.R.'s Best Interest

Last, respondent argues that the trial court's best-interest finding was against the manifest weight of the evidence. Specifically, she contends that terminating her parental rights was not in J.R.'s best interest because it did not "free him for adoption" since Robb's parental rights were only terminated pursuant to a specific consent to adoption, which did not constitute a complete surrender of J.R. to DCFS. We disagree.

■ Following a finding of parental unfitness, the trial court must give full and serious consideration to the child's best interest. We will not disturb a court's finding that termination is in a child's best interest unless it is against the manifest weight of the evidence. *In re M.F.*, 326 Ill. App. 3d 1110, 1115-16, 762 N.E.2d 701, 706 (2002).

██ At the time of the November 2002 best-interest hearing, J.R. was three years old and had been living with the Hyatts for a full year. He had a bond with the Hyatts, their home provided him with a safe and stable environment, and his health was good. The Hyatts wanted to adopt J.R., and Robb had executed a final and irrevocable consent to such adoption. No chance existed that respondent would be able to take care of J.R. in the foreseeable future, in light of her 25-year prison sentence.

In termination-of-parental-rights cases, often the trial court is left without a perfect solution, and the court must choose what in its judgment is the best alternative. It may be in a child's best interest to have his parents' parental rights terminated, even if no adoptive candidate exists. See *In re B.S.*, 317 Ill. App. 3d 650, 665, 740 N.E.2d 404, 417 (2000) (affirming the trial court's judgment terminating the respondent's parental rights despite evidence that there were no prospective adoptive parents), *overruled in part on other grounds in In re R.C.*, 195 Ill. 2d 291, 301-02, 745 N.E.2d 1233, 1241 (2001). Here, the court determined that the best available alternative was to provide J.R. with a chance for permanency with the Hyatts. That determination was not against the manifest weight of the evidence.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, J., concurs.

PRESIDING JUSTICE MYERSCOUGH, specially concurring:

I agree with the majority's finding that respondent forfeited her right to raise her objection to the State's petition on appeal because she failed to object to the State's petition in the trial court. I would have ended the analysis there. However, I concur in the majority's result, but specially concur to attempt to reconcile the majority's holding with the section of the statute under which respondent was found unfit.

The trial court found respondent unfit under section 1(D)(q) of the Adoption Act (750 ILCS 50/1(D)(q) (West 2000)), which provides that a parent is unfit if:

> "[t]he parent has been criminally convicted of aggravated battery, heinous battery, or attempted murder of any child." 750 ILCS 50/1(D)(q) (West 2000).

In the present case, respondent was convicted of first degree murder

of J.R. The legislature did not specifically list first degree murder in this section of the statute. It is logical to infer, however, that if a parent is criminally convicted of a greater offense—*i.e.*, first degree murder—that offense would naturally encompass the lesser offenses enumerated.

Black's Law Dictionary defines "aggravated battery" as "[a] criminal battery accompanied by circumstances that make it more severe, such as the use of a deadly weapon or the fact that the battery resulted in serious bodily harm." Black's Law Dictionary 146 (7th ed. 1999). Certainly first degree murder meets that definition and was intended by the legislature to fall within the purview of this section of the statute as a basis for a finding of unfitness.